Gary KENNICK, Petitioner-Appellant,

v.

**SUPERIOR COURT OF the STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, Respondent-Appellee.**

No. 82–5859.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 9, 1983.

Decided June 5, 1984.

As Amended July 18, 1984.

Judith M. Mitchell, Law Offices of Russell Iungerich, Los Angeles, Cal., for petitioner-appellant.

Christine C. Franklin, Deputy Atty. Gen., Los Angeles, Cal., for respondent-appellee.

Before BROWNING and NORRIS, Circuit Judges, and WILLIAMS * District Judge.

NORRIS, Circuit Judge:

Appellant Gary Kennick was convicted of four counts of grand theft after a jury trial in the Superior Court of California for the County of Los Angeles. He now challenges this conviction in a habeas corpus

* The Honorable Spencer M. Williams, United States District Judge for the Northern District of California, sitting by designation.

proceeding brought pursuant to 28 U.S.C. § 2253.

## I

On June 28, 1978, appellant was sentenced to three years probation. The probation sentence was subject to several conditions, the most important of which was that appellant spend the first year of the sentence in county jail. At the time of sentencing, appellant was also granted bail on appeal in the amount of $2,000, and a stay was ordered to July 12, 1978, pending posting of the appeal bond.

Shortly thereafter, bail was posted. Apparently believing that only the jail condition of his probation had been stayed by the June 28 order and subsequent posting of bail, appellant began reporting to the Probation Department pursuant to the court's probation order. Appellant continued to report to the Probation Department during the three-year pendency of his appeal.[1]

In due course, the California Court of Appeal affirmed the judgment of conviction. The California Supreme Court subsequently denied a hearing, and the remittitur issued on September 16, 1981.

Meanwhile, on June 8, 1981, prior to the conclusion of appellant's appeal, Los Angeles Superior Court Judge Ricardo Torres ordered the appellant's offense reduced to a misdemeanor, terminated appellant's probation, and dismissed the case.

Despite Judge Torres' order, upon issuance of the remittitur, Los Angeles Superior Court Judge Julius A. Leetham exonerated bail and remanded appellant to custody to begin compliance with the terms and conditions of the June 28 probation order.

Appellant petitioned for a writ of habeas corpus in state court. The petition was denied. *In re Kennick*, 128 Cal.App.3d 959, 180 Cal.Rptr. 731 (1982). The California Supreme Court denied appellant's petition for a hearing.

Having thus exhausted his state court remedies, appellant sought a writ of habeas corpus in the United States District Court for the Central District of California under 28 U.S.C. § 2254. The district court denied the request for a writ, and appellant now appeals.

## II

Appellant raises two issues on appeal. First, he contends that because his term of probation has already been either judicially terminated or fully served, he is being deprived of his liberty unlawfully in violation of the due process clause of the fourteenth amendment. Second, appellant urges that the state court's decision that he must now serve his full term of probation after he has already served three years of probation violates the double jeopardy clause's prohibition against multiple punishments for the same offense. For the reasons set forth below, we reverse the dismissal of appellant's petition.

## A

Appellant bases his due process claim on two arguments. First, he argues that Judge Leetham's order remanding him to custody was unlawful because Judge

---

1. Appellant's contention that he reported to the Probation Department is supported by two pieces of record evidence. First, the Magistrate's Supplemental Report and Recommendation, dated July 14, 1982, states, "Three years passed during which [Kennick] reported to the Probation Department." The district judge later "approve[d] and adopt[ed] the Magistrate's findings, conclusions, and recommendations" pursuant to an Order dated August 9, 1982. Second, on June 8, 1981, Superior Court Judge Ricardo Torres ordered that appellant's probation be terminated pursuant to § 1203.3 of the California Penal Code. Under § 1203.3, a court has authority to terminate a defendant's probation only "when the good conduct and reform of the person *so held on probation* shall warrant it." Cal.Penal Code § 1203.3 (emphasis added). Thus, the termination of appellant's probation amounted to a finding that appellant had been fulfilling the terms of his probation order. While the California Court of Appeal later held that Judge Torres lacked the authority to terminate appellant's probation, it never questioned this implicit finding. *See In re Kennick*, 128 Cal.App.3d 959, 180 Cal.Rptr. 731 (1982).

We also note that the state does not challenge appellant's contention.

Torres had previously terminated his probation and dismissed the case. Alternatively, appellant contends that even if Judge Torres did not lawfully terminate his probation, the stay issued on June 28, 1978, applied only to the jail condition of his probation and, consequently, by the time Judge Leetham issued his order, the three-year term of his probation had expired. Both of these arguments lack merit.

■ Appellant's first contention was rejected by the California Court of Appeal. *In re Kennick*, 128 Cal.App.3d 959, 180 Cal.Rptr. 731 (1982). That court found that under California law "where the execution of the judgment has been stayed pending appeal the trial court lacks jurisdiction during the pendency of the appeal to modify the judgment." *Id.* at 962, 180 Cal.Rptr. 731. The court concluded that since the appellant's probation was stayed pending appeal and since that appeal was not concluded until September 16, 1981, Judge Torres lacked authority to modify appellant's probation on June 8, 1981. Therefore, Judge Leetham was not acting unlawfully when he later remanded appellant to custody.

■ Appellant contends that the court of appeal misinterpreted California law. Absent arbitrary or discriminatory action, however, a mistake of state law does not constitute a due process violation; otherwise, "every erroneous decision by a state

court on state law would come as a federal constitutional question." *Engle v. Issac,* 456 U.S. 107, 121 n. 21, 102 S.Ct. 1558, 1568 n. 21, 71 L.Ed.2d 783 (1982). *See also Cooks v. Spalding,* 660 F.2d 738 (9th Cir. 1981), *cert. denied,* 455 U.S. 1026, 102 S.Ct. 1729, 72 L.Ed.2d 147 (1982). Since there is no evidence of arbitrariness or discrimination in the instant case, any mistake of state law does not rise to the level of a due process violation.

The second prong of appellant's due process argument is based on the contention that the stay issued on June 28, 1978, and the subsequent posting of bail, affected only the jail condition of appellant's probation and that consequently the non-jail portion of appellant's term of probation was running during the pendency of this appeal. The California Court of Appeal, however, rejected this argument, finding that the stay and posting of bail stayed the entire probation order and that as a result, appellant's term of probation was not running during the pendency of his appeal. 128 Cal.App.3d at 964, 180 Cal.Rptr. 731.

■ Again, appellant asks this court to reject the conclusions of the state court of appeal. But 28 U.S.C. § 2254 requires that this court accord the court of appeal's factual determinations a "presumption of correctness," unless one of a number of conditions is met.[2] *Sumner v. Mata,* 449 U.S.

2. 28 U.S.C. § 2254(d) provides:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, a written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;
(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;
(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
(7) that the applicant was otherwise denied due process of law in the state court proceeding;
(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for herein-

539, 549, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981). The presumption of correctness afforded state court factual determinations can only be overcome "by convincing evidence." 28 U.S.C. § 2254(d).

■ Appellant has not claimed that any of the special conditions is present in the instant case. Nor does evidence of the presence of any of the conditions appear in the record. Thus, under section 2254(d), this court can reject the court of appeal's finding only if appellant provides "convincing evidence" that the finding was erroneous. He has not met that burden. The only evidence appellant refers us to is the transcript of the June 28, 1978 hearing at which the stay was issued. Although the excerpt does not clearly support the court of appeal's finding, it is certainly not "convincing evidence" that the court of appeal was mistaken. Thus, like the district court, we reject appellant's due process claim.

**B**

Appellant's double jeopardy argument has considerably more merit.[3] It is elementary that a second punishment for a single offense is constitutionally impermissible,[4] and the state does not question appellant's claim that he may not be punished twice for the same offense. The state contends, however, that probation does not constitute punishment for the purposes of the double jeopardy clause.

Every circuit which has considered this question, however, has held that probation is punishment within the meaning of the double jeopardy clause—at least where the

question is whether the probationer can be required to reserve probation time already served rather than whether after revocation of probation for some infringement the probationer can be sentenced to imprisonment without credit for the time served on probation. *See, e.g., United States v. Bynoe,* 562 F.2d 126, 128 (1st Cir.1977); *United States v. Teresi,* 484 F.2d 894, 899 (7th Cir.1973); *Oksanen v. United States,* 362 F.2d 74, 80 (8th Cir.1966); *United States v. Rosentreich,* 204 F.2d 321 (2d Cir.1953). We agree.

These holdings comport with the relevant Supreme Court precedent. Although the Supreme Court has never considered this precise issue, it has consistently held that the double jeopardy clause must be construed broadly. In *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), the Court stated that "[a]lthough the constitutional language, 'jeopardy of life or limb,' suggests proceedings in which only the most serious penalties can be imposed, the Clause has long been construed to mean something far broader than its literal language." *Id.* at 528, 95 S.Ct. at 1785. In support of this contention, the Court cited a line of authority dating back to *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874). In that case, the Court stated, "It is not necessary in this case to insist that other cases besides those involving life or limb are *positively* covered by the *language* of this amendment." *Id.* at 170 (emphasis in original). The Court went on to cite approvingly a commentator who argued that "no man shall more than

after, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:
And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest

upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

3. The fifth amendment to the United States Constitution provides in part: "... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb ...."

4. *Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 462, 67 S.Ct. 374, 375, 91 L.Ed. 422 (1947); *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874); *Smith v. United States,* 287 F.2d 270 (9th Cir.), *cert. denied,* 366 U.S. 946, 81 S.Ct. 1676, 6 L.Ed.2d 856 (1961).

once be placed in peril of *legal penalties* upon the same accusation." *Id.* at 173 (emphasis added).

■ In light of this tradition of broad construction, we must conclude that probation constitutes punishment for double jeopardy purposes. Unquestionably, a probation order imposes "legal penalties," albeit mild ones. The order to which appellant is subject requires that he not associate with any person not approved by his probation officer, that he seek and maintain training, schooling, or employment approved by his probation officer, and that he obey all orders, rules, and regulations of the probation department and the court. In short, the order subjects appellant to a moderately intrusive regime of government supervision and regulation. While from a defendant's perspective such a regime is preferable to imprisonment, it is nonetheless punitive in nature. On its face, such a regime is more onerous than other sentences held to be within the ambit of the double jeopardy clause. *See, e.g., id.* at 175 (fine is punishment for double jeopardy purposes).[5]

The fact that probation is intended as a rehabilitative measure does not alter our evaluation. In another context, the Supreme Court stated that rehabilitative measures may still constitute punishment for double jeopardy purposes. *Breed v.*

*Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). " 'The rehabilitative goals of the system are admirable, but they do not change the drastic nature of the action taken.' " *Id.* at 530 n. 12, 95 S.Ct. at 1786 n. 12 (quoting *Fain v. Duff,* 488 F.2d 218, 225 (5th Cir.1973), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975)). Thus, we hold that at least when the question before the court is whether the probationer can be required to re-serve probation time already served, probation is punishment within the meaning of the double jeopardy clause.[6]

Having determined that probation is in fact punishment and that this case consequently implicates the limitations imposed by the double jeopardy clause, we must determine what the clause requires here. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), provides a useful analogy. In *Pearce,* the defendant was convicted and began serving his sentence. Some time into his sentence, the conviction was overturned. The defendant was then retried, reconvicted, and resentenced. The Supreme Court was asked to determine whether "the Constitution requires that credit must be given for that part of the original sentence already served." *Id.* at 716, 89 S.Ct. at 2076. The Court concluded that the Constitution did, stating:

**5.** We draw additional support from the fact that the federal courts have defined probation as punishment in other contexts. Thus, the Supreme Court has stated that "[a] probation order is 'an authorized mode of mild and ambulatory punishment, the probation being intended as a reforming discipline.' " *Korematsu v. United States,* 319 U.S. 432, 435, 63 S.Ct. 1124, 1126, 87 L.Ed. 1497 (1943) (quoting *Cooper v. United States,* 91 F.2d 195 (5th Cir.1937)) (holding that a probation order is an appealable final order).

**6.** The state contends that whatever the merits of these arguments, we are precluded from holding that probation is punishment for double jeopardy purposes by our decision in *Petersen v. Dunbar,* 355 F.2d 800 (9th Cir.1966). *Petersen,* the state argues, held that probation is not punishment within the meaning of the double jeopardy clause. The state misinterprets *Petersen,* however. The language on which the state relies, *id.* at 802, concerns the status of probation

under state law, not under the double jeopardy clause. In addition, the opinion goes on to state that the "[a]ppellant persuasively argues that punishment is punishment, no matter what name you apply to it," and "accepts arguendo appellant's characterization of his road camp duty as punishment." *Id.* Thus, *Petersen* does not stand for the proposition that probation is not punishment for double jeopardy purposes.

In two cases decided after *Petersen* this court implicitly recognized that probation is punishment within the double jeopardy clause. In *United States v. Jurgens,* 626 F.2d 142, 144 n. 1 (9th Cir.1980), we stated that "once probation has been granted, the fifth amendment protection against double jeopardy and the general policy in favor of sentencing finality come into play." In *United States v. Best,* 571 F.2d 484, 486 (9th Cir.1978), we held that after service of the jail portion of a sentence had begun, double jeopardy prohibited the judge from modifying the sentence by adding a term of probation.

We hold that the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense. *Id.* at 718–19, 89 S.Ct. at 2077 (footnote omitted).

In this case, as in *Pearce*, the defendant was subjected to punishment as the result of a mistake to which the government was a party. In *Pearce*, the offending governmental entity was the court; here, it is the Probation Department. In both cases, the government has been permitted to correct its mistake and proceed. But, in both instances, the Constitution requires that the defendant not be made to suffer as a result of a mistake in which the government participated. Consequently, appellant, like the defendant in *Pearce*, must be credited for time already served.

■ The appellant was granted probation for a period of three years on the condition that he spend the first year in county jail. During the three years his appeal was pending, appellant reported to the Probation Department. Because appellant must be credited for punishment already served, he cannot be made to re-serve the two-year, non-jail portion of his sentence. Appellant, however, did not serve the custodial portion of his probation during the three years his state appeal was pending. As a result, the double jeopardy clause does not prohibit the state from requiring him to fulfill the custodial condition of the original order. Generally, however, a period of confinement, to be served as a condition of probation, is to be served first in order to facilitate rehabilitation and allow the defendant to be phased back into society thereafter. *See In re Kennick*, 128 Cal.App.3d 959, 963, 180 Cal.Rptr. 731 (1982). Thus, this case should be remanded to the state court for consideration of whether appellant should be required to fulfill the custodial condition of his probation.

REVERSED and REMANDED.